# White v. The State.

### Indictment for Burglary.

1. *What is jeopardy; plea of former acquittal.* — Where an indictment is so de-fective that a conviction under it would be reversed, and the defendant refuses to consent to an amendment after the trial has commenced; and a *nol. pros.* is there-upon entered, and the defendant bound over to answer a new indictment (Rev. Code, § 4144), he cannot be said to have been in jeopardy, and the proceedings are no defence to a new indictment.

2. *Burglary; averment and proof of ownership of house.* — Under an indictment which alleges the ownership of the store house broken into to be in two persons jointly, a conviction may be had on proof that the title was in one of them only, while both of them carried on business in it as merchants, and owned the goods which were in it.

3. *Same: charge as to ownership.* — In such case, there being no conflict in the evidence as to the ownership, the refusal of the court to instruct the jury, on the request of the defendant, "that the ownership of the house must be proved as al-leged," is not error for which the judgment will be reversed.

4. *Weight of confessions as evidence.* — A conviction of burglary may be had on the uncorroborated confessions of the prisoner, if admissible and satisfactorily proved.

FROM the Circuit Court of Chambers.

Tried before the Hon. L. B. STRANGE.

The indictment in this case was found at the April Term of said Circuit Court, 1873, and charged, "that the defendant, Alfred White, *alias* Anthony Broughton, broke into and en-tered the storehouse of William C. Hudson and William A. Adams, with intent to steal, in which goods or merchandise were kept for sale, or on deposit." The defendant interposed a special plea, in these words: "And now comes the said de-fendant in his own proper person, and for answer to said in-dictment says, that the State ought not further to prosecute said indictment against him, because, he says, that at the Fall Term of said Circuit Court, the following indictment was pre-ferred against him;" setting out the indictment, which, omit-ting the caption and indorsements, was in these words: "The grand jury of said county charge, that before the finding of this indictment, Alfred White, *alias* Anthony Whitfield, broke into and entered the storehouse of William C. Hudson and William A. Adams, where goods and merchandise, to wit, twenty yards of calico, two pairs of boots, and fifty yards of cotton goods, with intent to steal; against the peace," &c. The plea then proceeded, "Which said indictment was prop-erly indorsed and signed by the foreman of the grand jury, and returned into court, and properly filed in open court, October 12, 1872. And defendant avers, that at the said Fall Term of said Circuit Court, 1872, said case being regularly reached, the State announced ready for trial, and so did the defendant; and a

full, complete, and lawful jury was sworn and empanelled to try said case. The State's council read said indictment to the jury, and the defendant pleaded not guilty. And the defendant further avers, that the State introduced one William C. Hudson as a witness, who testified to the ownership of the house, goods, and the breaking into the same. And defendant avers that the counsel for the State asked said witness, ' if goods were kept for sale in said storehouse ? ' to which question and proof the defendant objected, because the indictment did not allege that goods were kept in said storehouse for sale, use, or deposit ; which objection the court sustained. The solicitor for the State then moved the court to amend said indictment, by inserting the words, ' where goods were kept for sale, or on deposit ; ' and the defendant refused to consent to said amendment. The solicitor then moved the court for permission to enter a *nolle pros.* and to bind over the defendant until the next grand jury could prefer another indictment against him ; and the court granted said motion, and bound over the defendant to the next term of the court ; to which the defendant excepted. And the defendant avers, that he then moved the court to discharge him, because jeopardy had commenced, and the withdrawal of the indictment at such a time, by entering a *nolle pros.* was an acquittal of the defendant as to said charge ; which motion the court overruled and refused, and the defendant excepted. And said defendant avers, that the indictment now pending against him, and to which this plea is an answer, is founded upon the same state of facts and circumstances as said former indictment ; and that he should be discharged from custody, and from any further answer to this indictment, because he says he has been once in jeopardy upon the same facts and circumstances, and to arraign and try him now is an infringement on his constitutional right, putting him in jeopardy a second time for the same offence." The court sustained a demurrer to this plea, and the defendant then pleaded not guilty.

" On the trial," as the bill of exception states, " the State introduced one William A. Adams as a witness, who testified that on the 16th day of April, 1872, the storehouse in which he and one William C. Hudson carried on the business of merchants, was burned ; that said store belonged to Hudson and Adams ; that the defendant was arrested on the next day by several gentlemen, he being terribly burned on the face, hands, and chest ; that a few days afterwards, in the jail of said county, the defendant confessed to witness that he broke into and entered said storehouse, and that it was burned by him accidentally after he had got into the house ; that he got into the house by means of a false key, and had got all the goods he

wanted except powder ; that he returned to get the powder, and spilled some in pouring it out, which ignited and burned the house. The State then introduced one R. T. Humphries as a witness, who testified that he, in company with others, arrested the defendant, and found in his house goods which were identified as belonging to the parties who were doing business in the house which was burned. The State also introduced William C. Hudson as a witness, who identified the goods found in the possession of the defendant, as the goods belonging to himself and William A. Adams, and said they belonged in the store which was burned. Said Hudson testified, on cross-examination, that he was the owner of the house which was burned, and that he and said Adams were the owners of the goods in said store, where they were kept for sale. The State then closed its testimony, and so did the defendant, he not introducing any testimony. The court, in its general charge, instructed the jury that if they believed, from the evidence, that William C. Hudson and William A. Adams were doing business in said house when it was burned, that would be sufficient ownership of said house, as laid in the indictment. The defendant excepted to this charge, and then requested the court, in writing, to instruct the jury as follows : 1. ' That if the State has failed to prove the ownership of the house, as charged in the defendant, then the jury cannot find the defendant guilty, as charged.' 2. ' That if there is no evidence before the jury of the breaking and entering said house, save only the confessions of the defendant, and the circumstances of the breaking and entering are only proved by the defendant's confessions, then the jury must acquit the defendant.' The court refused to give these charges, but offered to give the first, with a qualification, which the defendant refused to accept ; to which refusal the defendant excepted."

W. H. DENSON, for the prisoner.

BEN. GARDNER, Attorney General, for the State.

B. F. SAFFOLD, J. — The appellant, to an indictment for breaking into and entering the storehouse of William C. Hudson and William A. Adams, in which goods or merchandise was kept for sale or on deposit, with intent to steal, pleaded that he had before been in jeopardy for the same offence, under an indictment which charged him in like terms, except that the house was described as " the storehouse of William C. Hudson and William A. Adams, where goods and merchandise, to wit, twenty yards of calico, two pairs of boots, and fifty yards of cotton goods," omitting the words " were kept

[White *v.* State.]

for use, sale, or deposit." A demurrer to this plea for insufficiency was sustained. The indictment set out in the plea is so defective, that, if the defendant had been convicted under it, he could have had any judgment entered up against him reversed. It is neither a charge of burglary, nor of larceny nor of an attempt to commit either. When this is the case there is no jeopardy, and the solicitor is authorized to ask for a *nol. pros.* and to indict anew. *Crawford* v. *The State*, 44 Ala. 382; 1 Bishop Crim. Law, § 862; Rev. Code, § 4146. The demurrer was properly sustained.

2. The indictment alleged the storehouse to have been that of William C. Hudson and William A. Adams. It was proved to have been the property of Hudson, but that he and Adams carried on a mercantile business in it, and owned the goods kept therein for sale. The court charged that if Hudson and Adams were doing business in the house at the time, it would be a sufficient ownership. This charge was not erroneous. Burglary is an offence against the security of the habitation or building, not against it as property. Possession and occupancy are generally sufficient, and the tenure by which the occupier holds the premises will not be inquired into. 1 Bish. Crim. Law, § 1012; 2 Bish. Crim. Proc. 109.

3. Both of the charges asked by the defendant assert abstract propositions directly in the face of the evidence. As to the first, the ownership of the house must certainly be proved substantially as averred. The witness Adams testified that the house belonged to him and Hudson, and they carried on the business of merchants in it. Hudson swore that it belonged to him, but the goods in it belonged to him and Adams. Humphries said the goods found in the possession of the accused were identified as those belonging to " *the parties* who were doing business in the house." The defendant introduced no testimony. This evidence, unopposed, sustained the ownership averred. The real meaning of the charge asked was, that the possession and occupancy proved to have been in Hudson & Adams must give way to the superior title to the property vested in Hudson, and thereby the allegation of ownership was disproved. The proposition is incorrect.

4. As to the second, is it true that the accused cannot be convicted on his own confession alone, without independent proof of the " *corpus delicti?* " The expression " *corpus delicti* " means, literally, the body of the crime or offence. Webster defines it to be, " the substantial and fundamental fact of the crime having been committed; the proofs essential to establish a crime, the subject of the crime itself, as the body of the person murdered, &c." When it is said that this must be proved by testimony independent of the confessions of the

accused, it is obviously not meant that the commission of the crime must be so proved, because the effect of the admission or confession would be confined to the ascertainment only of the person who committed it. Such a construction would defeat half of the reason of the caution, which is, that where a crime actually committed has caused great public excitement and notoriety, persons have accused themselves of it, though their innocence was afterwards clearly established. In murder, it seems to be restricted to the subject of the crime, as the body of the person supposed to have been murdered, dead under circumstances indicating crime, — not that he was murdered, nor that he was simply dead. If it means no more than this, in so heinous a crime as murder, it cannot mean, in burglary, more than that there was a breaking or an entering of the house.

But confessions are divided into judicial and extrajudicial. Of the former, are the preliminary examinations taken in writing by the magistrate pursuant to statutes, and the plea of guilty, made in open court, to an indictment. " Either of these is sufficient to found a conviction, even if to be followed by a sentence of death, they being deliberately made, under the deepest solemnities, with the advice of counsel, and the protecting caution and oversight of the judge. Such was the rule of the Roman law,— *confessos in jure, pro judicatis haberi placet ;* and it may be deemed a rule of universal jurisprudence." 1 Greenleaf on Ev. § 216 ; Starkie on Ev. (Sharswood) t. p. 331. It cannot, therefore, be a principle of law, that the confessions alone of the accused are insufficient to support his conviction, even in a case of capital felony. It is to the extrajudicial confessions, when uncorroborated, that the objections to a conviction are directed. As to these, the true rule seems to be that stated by Joy, as the English law : " Whatever difference of opinion exists, in respect of the weight which ought to be attached to evidence derived from a confession ; yet, where it is admissible, and satisfactorily proved, it is deemed sufficient by the English law to convict a prisoner, even capitally, without the aid of any corroborative testimony of his having committed the offence with which he is charged." Joy on Confessions, Law Lib. vol. 40, m. p. 103 ; 1 Phil. Ev. p. 541, and notes ; Wharton's Am. Law, § 683 ; 1 Bish. Crim. Proc. §§ 500, 501.

The burning of the storehouse, and the discovery of a portion of the goods which were contained in it, in the possession of the defendant, were otherwise proved than by the confessions. Notwithstanding the house was consumed by the fire, if the goods which the prisoner had were obtained out of it, it must have been by an entrance effected before the consump-

tion. A breaking may be done by fire as well as by other means. The entrance and intention being shown, the breaking is not lost or merged in the consumption. The conviction would not rest solely on the confessions. The charge was properly refused, as being contrary to law, and inapplicable to the evidence.                          The judgment is affirmed.