LEIGH M. CLARK, Retired Circuit Judge.
A jury found appellant guilty under an indictment which, omitting the formal parts thereof, is as follows:
“The grand jury of said county charge that, before the finding of this indictment, JAMES ALLRED, whose name is to the Grand Jury otherwise unknown, did draw a check or cause or direct the drawing of a cheek with intent to defraud on the account of A. & G. Coal Company, Inc., a corporation, in the amount of THIRTY EIGHT THOUSAND THREE HUNDRED EIGHTY FOUR DOLLARS AND SIXTY-EIGHT CENTS, upon the First National Bank of Birmingham, Jefferson County, Alabama, knowing at the time of the drawing of the check that the account of A. & G. Coal Company, Inc., a corporation, upon which the check was drawn did not have sufficient funds on deposit in or enough credit with First National Bank of Birmingham, Birmingham, Jefferson County, Alabama, for the payment in full of such check.”
A major insistence on appeal, as well as in the trial court, is that it is too vague and indefinite to apprise defendant of what he is called upon to defend. The indictment was based upon the Alabama Worthless Check Act (Acts 1971, No. 2479, p. 3958), particularly § 4 thereof, which provides:
“It shall be unlawful for any person to draw a check, or to cause or direct the *1028 drawing of a check, with intent to defraud, on any depository, knowing at the time of the drawing of such check that the maker, drawer or payer thereof does not have sufficient funds on deposit in or enough credit with the depository for the payment in full of such check and all other checks upon such funds or credit then outstanding....”
Section 12 of said Act provides that the punishment for the crime, when “the check is for $500.00 or more,” shall be a “fine of not less than $500.00 nor more than $5,000.00 and/or imprisonment not to exceed three years.” The jury fixed defendant’s punishment at a fine of $4,000.00. The court imposed no additional punishment.
After arraignment, but well before the date set for trial defendant filed a motion to dismiss the indictment, which assigned twelve separate and several grounds, among which were included, that it did not state whom the defendant intended to defraud, the name of the payee in the check, the date of the alleged check, and more general grounds as to the sufficiency of the indictment.
We readily see that an indictment under the Alabama Worthless Check Act that merely sets forth as factual averments the name or designation of the account upon which the check is drawn and the amount of the check would be insufficient to particularize the transaction that gave rise to the indictment. It could well be that over a course of a few months or a year the drawer of checks would have drawn a large number of checks for the same amount on the same account. Faced with an indictment that he had drawn a check on such an account for that amount, he could be bewildered by the large number of possibilities as to what specific check was involved. This, however, can hardly reasonably be stated as to a check in the exact amount of $38,384.68 as alleged in the indictment.
It is to be noted also that the indictment does not allege the name or identity of the payee of the check. The omission thereof in an indictment under the Act could well lead to great difficulty for an accused in an effort to determine what he is called upon to defend. Furthermore, the omission could leave an accused at a loss to determine whom or what entity the prosecution contends he intended to defraud. This, according to the rationale of Andrews v. State, per Judge Bookout, Ala.Cr.App., 344 So.2d 533, cert. denied, Ala., 344 So.2d 538 (1977), holding that an indictment for an assault and the like should state the name of the victim, if known, subjects the indictment in the instant case to serious criticism.
A demurrer constitutes the appropriate method of testing the sufficiency of an indictment. McKinney v. State, 50 Ala.App. 271, 278 So.2d 719, cert. denied, 291 Ala. 789, 278 So.2d 724 (1973). However, as stated in Andrews, supra, “Due process dictates that a defect associated with an essential element of the offense which leaves the accused unaware of the nature and cause of the charge against him cannot be waived by failure to timely demur. (Authorities cited).”
Notwithstanding our expressed view in derogation of the quality of the indictment when considered abstractly, we find that reversible error cannot be predicated thereon under the facts and circumstances of the instant case. The record shows that the motion to dismiss the indictment was brought to the attention of the trial court and to some extent it was argued, but very little was said about it, and the defendant did not insist on a ruling thereon. We follow the action taken in Hill & Pitchford v. State, Ala.Cr.App., 339 So.2d 601, cert. denied, Ala., 339 So.2d 610 (1976) on the ground stated on rehearing in Andrews v. State, supra, in distinguishing it from Hill & Pitchford in saying that in Hili & Pitch-ford “No ruling of the trial court was before this Court for review.” In addition, we note that the record shows affirmatively that defendant at the time of trial knew the identity of the check he was charged with unlawfully drawing. Based on his knowledge of the identity of the check, defendant filed a plea of former jeopardy, or collateral estoppel, in which he averred that defend *1029 ant had been previously put to trial on a previous indictment for unlawfully drawing the identical check, and charged in the plea that as to that indictment and trial thereon, the court “stopped the trial after essentially all of the State’s evidence was in” and “dismissed” the prosecution and ordered that “another indictment ... be preferred.” After considerable argument and a lengthy hearing, the court ruled against defendant as to his plea of former jeopardy.
Appellant presents the adverse ruling on his plea of former jeopardy as another ground for a reversal. The burden of his contention seems to be that as the jury had been selected and sworn in the previous case, jeopardy had attached and defendant could not be tried again for the same alleged crime.
The answer to appellant’s contention as to the plea of former jeopardy is amply supplied by Code 1975, §§ 15-8-90 and 15-8-91, formerly Code 1940, Tit. 15, §§ 253, 254, as follows:
“§ 15-8-90. An indictment may be amended, with the consent of defendant entered of record, when the name of the defendant is incorrectly stated or when any person, property or matter therein stated is incorrectly described.
“§ 15-8-91. If the defendant will not consent to such amendment of an indictment, the prosecution may be dismissed at any time before the jury retires as to the count in the indictment to which the variance applies, and the court may order another indictment to be preferred at a subsequent time, in which case an entry of record must be made to the effect following: [a prescribed form for such an order].”
The record shows that on the trial of a previous prosecution for drawing the same check it developed that there was a fatal variance between the evidence and the particular language of that indictment, which is different from the language of the indictment in the instant case, in that the first indictment alleged that defendant “the said James Allred did not have sufficient funds on deposit” or “enough credit” for the payment of the check, and that there was no evidence to support such averment, that on the other hand the evidence showed that the particular check was drawn on the account of A. & G. Coal Company, Inc., a corporation, and that said company did not have sufficient funds on deposit or enough credit for the payment of the check. The record further shows that the court in the first case determined that the defendant would not consent to an amendment of the indictment so as to meet the variance and meticulously entered an order in compliance with provisions of the cited sections of the Code.
Compliance with the statutory law on the subject in dismissing a prosecution on the ground of a material variance does not furnish a basis for a plea of former jeopardy. Oliver v. State, 234 Ala. 460, 175 So. 305 (1937); Moore v. State, Ala.Cr.App., 366 So.2d 1150 (1979); Pratt v. State, 48 Ala.App. 341, 264 So.2d 571 (1972); Ex parte Shirley, 39 Ala.App. 634,106 So.2d 671, cert. denied, 268 Ala. 696, 106 So.2d 674.
The only remaining ground asserted by appellant for a reversal relates to the question of the sufficiency of the evidence to justify a guilty verdict. This gives us considerable concern. It was not a case in which at the moment of the drawing of the check defendant obtained quid pro quo. The check was drawn by two persons, both officers of A. & G. Coal Company, Inc., a corporation, with authority to draw on the account of said company. Ray-Brooks Machinery Company, Inc. was the payee of the check. The two companies had entered into a contract whereby Ray-Brooks Machinery Company was to supply certain machines and machinery to A. & G. Coal Company for the purpose of dehydrating saturated coal dust or small particles of coal, referred to in the evidence as “coal fines.” It was to be a cash transaction, but each party apparently knew that A. & G. needed financing. We are impressed by the strength of the evidence on behalf of defendant indicating that both the buyer and the seller understood at the time the check was drawn that there was not enough money in the bank to *1030 take care of the check. We are not persuaded that such evidence was outweighed by the evidence tending to show the contrary. The evidence does not firmly convince us that defendant had that necessary intent to defraud that is an essential of the crime charged. The entire transaction was one difficult to assay. The apparatus involved was complicated. Many pages of a lengthy record are devoted to attempts to explain the intricacies of the problem involved. The equipment sold or supplied by the contract was delivered to A. & G. Coal Company, but it did not work as expected. On the other hand, the evidence indicates that both parties understood that it was not reasonably certain that it would work at the time.
At the time the contract was entered into between the parties, a deposit of $6,000.00 by cheek was given to the agent for Ray-Brooks Machinery Company, which check was deposited and honored. At the time the check alleged in the indictment was delivered to the agent of Ray-Brooks Machinery Company, he was asked, according to his own testimony on the trial, to hold the check “for a couple of days.” However, he said that he was not told that the check at the time “was not good.” The check was held nine days before deposit; it was returned about six days thereafter, marked by the bank “N.S.F.” (Not Sufficient Funds). The record shows that during all of such time the amount of the cheek was far in excess of the funds in the bank to the account of A. & G. Coal Company.
Irrespective of our concern as to the strength of the evidence favorable to the State as opposed to the evidence favorable to defendant on the crucial issue of the existence of the essential element of intent to defraud, we cannot say that there was not substantial evidence in favor of the State on the point. In this circumstance, a jury question was presented. We state also that the question of the sufficiency of the evidence to justify a submission of the case to the jury was not raised by any motion to exclude the evidence or any request for a directed verdict or an affirmative charge in favor of defendant. There was no motion for a new trial.
In the absence of any error in the record prejudicial to defendant, the judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.