## LONG *vs.* THE STATE.

[INDICTMENT FOR RETAILING SPIRITUOUS LIQUORS WITHOUT LICENSE.]

1. *License laws not revenue measures.*—The several provisions of the statutes of this State authorizing licenses to retail, are not merely revenue laws : the payment of the prescribed tax, is only one of the pre-requisites to obtaining a license, and the other provisions of the statute (as to producing certificate, giving bond, and taking oath prescribed) show that the legislature considered it a dangerous privilege, the abuse of which they were intended to guard against.

2. *License to one partner no authority to co-partner or partnership.*—Although a license may be granted to a partnership, upon each partner complying with the requisitions of the statute as to certificate, oath, &c.; yet a license to one partner individually confers no authority upon his co-partners or the firm.

FROM the Circuit Court of Butler.
Tried before the Hon. C. W. RAPIER.

Long v. The State.

THIS indictment, which was found at the Fall term, 1854, was in the general form prescribed by the Code (§ 1059) for "retailing spirituous liquors without a license." On the trial, the State introduced evidence "tending to show that the defendant retailed in the town of Greenville in said county, between the 24th March, 1854, to within a few days of the Fall term of the Circuit Court. The defendant then showed by evidence, that in December, 1853, one Isaac Y. Smith obtained from the Probate Court of Butler a license, in due form, authorizing him to retail in the town of Greenville for twelve months from the issuance of said license; that said Smith, soon after obtaining license as aforesaid, commenced retailing, and continued to do so until the 24th March, 1854; that at this period the defendant purchased from said Smith the larger interest in his retailing establishment, the whole capital being less than $500, and said Smith retaining an interest therein to the extent of $137; that said defendant, from the time of his said purchase until shortly before the Fall term of said court, 1854, personally conducted the business of the establishment, supplying it with liquors from the profits of the concern, and retailing them out, and was interested in the profits in proportion to his interest in the establishment; that said Smith, from the time of the sale to defendant, had no ostensible connection with the establishment, but continued interested therein as a partner to the extent of the interest he had retained, until shortly before the Fall term of said court, 1854; and that while the defendant was such partner of Smith, the retailing proved by the State took place. The proof showed, also, that the only retailing done by the defendant, between said 24th March, 1854, and shortly before said Fall term of said court, was done in the town of Greenville, in the house which had been and was occupied by said Smith, the partner of said defendant, at the time the partnership began, and at but one place in said town. There was no proof showing the number of inhabitants in said town of Greenville."

"Upon this proof, the court charged the jury, that if they found the facts as herein set forth, the defendant was guilty, and, if guilty, they must assess a fine of at least thirty dollars against him." The defendant excepted to each part of this charge, and he now assigns the same for error.

WATTS, JUDGE & JACKSON, for the appellant :

Smith's license authorized him to retail at one place in the town of Greenville, either by himself, or through a clerk or agent, for the term of one year. It certainly cannot be contended, that a licensed retailer cannot lawfully employ a clerk or agent to vend his liquors. But each partner is the agent of the other, in all business within the scope of the partnership : each act of retailing by the defendant, was, at the same time, the act of Smith. It was certainly a legal act in Smith, and it must be equally a legal act in Long ; for the same act cannot, at one and the same time, be both legal and illegal. This is not the case of a sale or transfer of a license. Each act of the defendant in selling, was also the act of Smith, for which, but for his license, Smith might have been indicted. To say that Long is liable because, by virtue of the partnership, he is principal with Smith as well as agent, involves this absurdity : Long acts both as principal and agent ; each act, as agent, is lawful, but at the same time, as principal, unlawful.

M. A. BALDWIN, Attorney General, contra:

The statute does not deem every one a fit person to be entrusted with the dangerous privilege of selling spirituous liquors. It requires each applicant for a license to produce a certificate of good moral character, to give bond, and to take and subscribe a stringent oath ; and it confines the privilege " to the person alone to whom the license is granted." Code, §§ 398, 1056, 1057. The right to retail, thus conferred, is a personal trust, and cannot be delegated or transferred. Commonwealth v. Branamon, 8 B. Mon. 374 ; Godfrey v. The State, 5 Blackf. 151 ; Lewis v. The United States, 1 Morris (Iowa) 199.

RICE, J.—Section 398 of the Code expressly declares, that a license for retailing must be confined to one place only in the county, and " to the person alone to whom the license is granted."

Section 1056 declares, that no such license must be granted, " unless the applicant produce to the judge of probate of his county the recommendation of six respectable freeholders or

householders thereof, residing within five miles of such appli-
cant, stating that they are acquainted with him, that he is
possessed of a good moral character, and in all respects a
proper person to be licensed."

Section 1057 provides, that "the applicant must also, be-
fore obtaining his license, take and subscribe the following
affidavit: "I do solemnly swear, that I will not sell any
vinous or spirituous liquor to, or sell to, or purchase from,
any slave, any article or commodity, without the permission
of the owner, master, or overseer, of such slave ; and that I
will not knowingly suffer the same to be done by my partner,
clerk, agent, or any other person, upon or about my prem-
ises, *if in my power to prevent the same;* and further, that I
will not allow any gaming of any kind to be carried on, on
or about my premises, *if in my power to prevent the same.*"

Section 397, makes the additional requisition, that the ap-
plicant for a license to retail in a city, town, or village hav-
ing less than five hundred inhabitants, shall pay as State tax
thirty dollars, before obtaining his license ; and requires a
higher price as State tax to be paid for a license to retail in
a city, town, or village having a larger number of inhabi-
tants.

Section 399 provides, that on a conviction for selling spirit-
uous or vinous liquor without a license, the person convicted
must be fined not less than the State tax, as fixed in section
397, for such license, and may be imprisoned by the court, not
exceeding sixty days.

Section 1060 declares, that no person must obtain a judg-
ment in any court of this State, upon any account, *any item
of which* is for vinous or spirituous liquor in less quantities
than one quart, without producing to the court a license
*showing his authority to retail* at the date of such item.

Section 1 declares, that the singular includes the plural,
and the plural the singular.

Section 1058 defines the meaning of retailers and retailing.

The foregoing are the only provisions of our statute law,
which we think have any bearing on the questions to be de-
cided in the present case ; and looking at all these provisions
together, we think it clear, that the law authorizing licenses
to retail, is not merely a revenue measure. The payment of

the prescribed tax, is only one of the pre-requisites to obtaining such license. The other pre-requisites show that the legislature deemed the privilege of retailing so dangerous, that it was not to be entrusted to any person, until he was properly recommended, nor even to such person, until he became bound by oath in writing to perform the obligations set forth in the prescribed affidavit.

We concede that a license may be granted to a partnership, upon a compliance with the law by its members. No greater amount would have to be paid for such license, than for a license to a single individual. Yet, before it could lawfully be granted, it would be necessary that *each member* of the firm should produce the prescribed recommendation, and take and subscribe the prescribed affidavit. We also concede, that when a license has been granted to an individual, he may exercise the privilege it confers, by his clerk, or agent; for the acts of his clerk, or agent, are, in law, his acts, and nothing more. And so, when a license has been granted to a partnership, the firm may exercise the privilege it confers, by its clerk, or agent; for the acts of its clerk, or agent, are, in law, its acts, and nothing more. The clerk, or agent, is entirely under the control and superintendence of the principal. But one partner is not the mere clerk, or mere agent, of his copartner, nor entirely under his control and superintendence. Each partner has rights and powers, and is subject to responsibilities, which do not attach nor appertain to a mere clerk or agent.

A license to retail affords protection only for those acts, which, in law, are merely the acts of the person to whom it was granted. If it is granted to an individual, it affords protection only for those acts which, in law, are merely his acts as an individual. If it is granted to a partnership, it affords protection only for those acts, which, in law, are the acts of the firm. A license to an individual cannot be a license to a partnership.

This construction allows some effect to each of the various provisions of the Code above cited; and any other construction would annul the explicit declaration, contained in section 398, that a license to retail shall be confined "*to the person alone* to whom the license is granted."

The evidence in the present case shows, that Long was not the mere agent or clerk of Smith, but that in retailing he acted *as the partner* of Smith, and was in fact *such partner*. If the acts of Long can be regarded as binding upon Smith, it is only because they are the acts of *the firm*. They are *not the mere acts of Smith*, but are either the acts of Long alone, or of the firm. Suppose Long retailed on a credit, and should sue upon an account for the liquor thus retailed, either in his own name or in the name of the firm; and suppose the defendant in that suit should rely for his defence on the provisions of section 1060 of the Code, above cited; it is clear, the defence in that case would be good, because the license does not show any authority to retail, either in Long, or in the firm of Smith & Long.

We are satisfied that there is no error in either of the charges of the court below. The correctness of the last charge is manifest from the mere reading of sections 397 and 399 of the Code above referred to.

The judgment is affirmed.